IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERNEST NAJERA,

    Plaintiff,

vs.                                                                                         Civ. No. 19-1050 KG/KRS

BOBBY BROOKHOUSER and
DAVID OLGUIN,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon "Defendant Olguin's [sic] Motion to Dismiss Plaintiff's First Amended Complaint and for Qualified Immunity" (Motion to Dismiss),[1] filed December 20, 2019. (Doc. 19). Plaintiff filed a response on January 10, 2020, and Defendant David Holguin (Holguin) filed a reply on January 17, 2020. (Docs. 20 and 24). Having reviewed the Motion to Dismiss, the accompanying briefing, and the First Amended Complaint, the Court grants the Motion to Dismiss in that Court I is dismissed without prejudice as to Holguin.

*I. The First Amended Complaint*

Plaintiff brings this 42 U.S.C. § 1983 civil rights lawsuit against Luna County Sheriff's Deputies Bobby Brookhouser and David Holguin, in their individual capacities. (Doc. 17) at ¶ 3. Plaintiff alleges that Larry McCormick owned a "junkyard" in Deming, New Mexico, and had agreed to sell the real property and its contents to Elizabeth Eidinger, who lived on the property.

---

[1] Plaintiff incorrectly identified Defendant David Holguin as "David Olguin" in the First Amended Complaint for Wrongful Arrest, Malicious Prosecution and Excessive Force (First Amended Complaint) (Doc 17). *See* (Doc. 20) at 1 n.1.

*Id.* at ¶¶ 8, 13-14.  Plaintiff alleges that "Defendants knew that Eidinger had lived on the McCormick property."  *Id.* at ¶ 15.

Plaintiff further alleges that McCormick's wife, who lives in Arizona, reported McCormick as missing in October 2015 and that "law enforcement" presumed that human remains found on the McCormick property belonged to McCormick.  *Id.* at ¶¶ 17-18, 25.  Plaintiff asserts that nearly a year later, the Office of the Medical Investigator confirmed that the human remains belonged to McCormick.  *Id.* at ¶ 19.  Plaintiff maintains "Defendants" knew that even after McCormick was presumed dead, McCormick's wife "did nothing to secure any real or personal property purportedly belonging to her or Larry McCormick," including establishing an "Estate of Larry McCormick."  *Id.* at ¶¶ 27 and 29.  Consequently, Plaintiff contends that McCormick's wife either did not own the junkyard and its contents or abandoned that property.  *Id.* at ¶ 28.

Plaintiff alleges that on September 21, 2016, Defendant David Brookhouser (Brookhouser) and Holguin arrested him and charged him with three counts of an unlawful taking of a motor vehicle, three counts of larceny, and one count of conspiracy to commit the unlawful taking of a motor vehicle.  *Id.* at ¶¶ 4 and 6.  According to Plaintiff, "[a]ll the charges, except for one count of unlawful taking of a motor vehicle, alleged that the owner was Larry McCormick."  *Id.* at ¶ 7.  Plaintiff contends that he "told Defendants that Eidinger told him that she had bought or was in the process of buying the property from McCormick."  *Id.* at ¶ 16.  Plaintiff asserts that he was selling "items from the Eidinger property" that no longer belonged to McCormick.  *Id.* at ¶ 36. Nonetheless, Plaintiff alleges that "Defendants listed Larry McCormick and the Estate of Larry McCormick as the victim of the alleged larcenies."  *Id.* at ¶ 29.

Plaintiff also contends that "Defendants never investigated [his] claim that Eidinger was buying the property from McCormick" nor did "Defendants" question Eidinger about his claims. *Id.* at ¶¶ 37 and 38.  Even so, Plaintiff maintains that "Defendants asserted in a search warrant affidavit that 'it is known that Elizabeth Eidinger … had no interest in the property and its contents at" McCormick's property.  *Id.* at ¶ 39.

In addition, Plaintiff alleges that when Defendant arrested him on September 21, 2016, Brookhouser roughly handcuffed him with two set of handcuffs, tightened the handcuffs, and pushed Plaintiff, which caused Plaintiff to suffer pain.  *Id.* at ¶¶ 40 and 42.  Plaintiff states that he is 75 years old, suffers from diabetes and arthritis, and was born with crooked arms.  *Id.* at ¶¶ 41 and 44.  Plaintiff contends that as a result of Brookhouser's actions, "Olguin [sic] stepped in and told Defendant Brookhouser to 'Stop' and 'that was enough' because of how roughly Defendant Brookhouser was treating" Plaintiff.  *Id.* at ¶ 45.

Plaintiff alleges that he was placed in custody at the Luna County Detention Center because he could not post the $25,000 bond.  *Id.* at ¶¶ 46, 48, and 49.  Plaintiff maintains that the state district court released Plaintiff from the detention center at 11:00 a.m. on September 29, 2016, due to a medical condition.  *Id.* at ¶ 50.  Plaintiff alleges that "Defendants" knew about this medical release.  *Id.* at ¶ 52.

Next, Plaintiff asserts that at around 5:00 p.m. on September 29, 2016, Brookhouser and five or six Luna County Sheriff's Deputies arrived at Plaintiff's house.  *Id.* at ¶ 54.  According to Plaintiff, Brookhouser told Plaintiff "he was under arrest for stealing the white pickup truck that was on his property."  *Id.* at ¶ 55.  Plaintiff asserts that "[o]n September 29, 2016, Defendants learned that a white pick-up truck had been given to Eidinger while McCormick was still alive." *Id.* at ¶ 31.  Plaintiff alleges that "[t]he white pick-up truck had an open title, which McCormick

3

had given to his friend" Eidinger.  *Id.* at ¶ 12.  Plaintiff contends that Eidinger then gave him an "open title" to the white pick-up truck, which he titled in his name, and then sold it for Eidinger. *Id.* at ¶ 32.

After Brookhouser handcuffed Plaintiff, Plaintiff maintains that Brookhouser pulled him "to and from his truck to Defendant Brookhouser's police vehicle."  *Id.* at ¶¶ 59-60.  Plaintiff alleges that "Defendants charged [him] will [sic] one count of Unlawful Taking of a Motor Vehicle."  *Id.* at ¶ 62.  Plaintiff contends that all of the charges against him were subsequently dismissed.  *Id.* at ¶ 72.

Relevant to this Motion to Dismiss, Plaintiff brings Section 1983 Fourth Amendment wrongful arrest and malicious prosecution claims against Holguin in Count I of the First Amended Complaint, the only claims Plaintiff brings against Holguin in this lawsuit.[2]  Plaintiff alleges that "Defendants" arrested him without probable cause although he "twice explained to Defendants that he did not steal anything and had no knowledge it was stolen."  *Id.* at ¶¶ 76, 77, and 86.  Plaintiff further notes that "Defendants failed to even interview Eidinger."  *Id.* at ¶ 79. Also, Plaintiff alleges that "Defendants acted maliciously in charging [him] with an additional count of larceny on September 29, 2016, when they knew that the court had released [him] for medical reasons."  *Id.* at ¶ 82.

---

[2] Plaintiff also brings Count I against Brookhouser and brings a Section 1983 Fourth Amendment excessive force claim against Brookhouser in Count II.

*II. The Motion to Dismiss*

Holguin moves under Fed. R. Civ. P. 12(b)(6) to dismiss the Fourth Amendment claims brought against him in Count I.[3] Holguin argues that Plaintiff fails to state plausible Fourth Amendment claims against him, and, in the alternative, argues that he is entitled to qualified immunity with respect to those claims. Plaintiff argues that he states plausible Fourth Amendment claims against Holguin and that Holguin is not entitled to qualified immunity.

*III. Rule 12(b)(6) Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In making this plausibility assessment, courts "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011)).

In evaluating a qualified immunity defense in the context of a Rule 12(b)(6) motion to dismiss, courts "must determine whether the plaintiff pled facts indicating: (1) the defendant violated a statutory or constitutional right and (2) that right was 'clearly established' at the time of the challenged conduct." *Crall v. Wilson,* 769 Fed. Appx. 573, 575 (10th Cir. 2019) (quoting

---

[3] Holguin also requests that the Court stay all proceedings pending the disposition of this Motion to Dismiss. The Magistrate Judge already delayed the entry of the scheduling order until the Court rules on the pending dispositive motions. *See* (Doc. 10). The Court, therefore, will deny Holguin's request for a stay as moot.

*Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Courts "may address the two prongs of the qualified immunity analysis in either order: '[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense.'" *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied sub nom. Cummings v. Bussey*, 140 S. Ct. 81 (2019) (quoting *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016), *cert. denied*, ___ U.S. ___, 137 S.Ct. 2151 (2017)).

## IV. Discussion

Holguin argues that with respect to the first qualified immunity prong, violation of a statutory or constitutional right, Plaintiff fails to allege a plausible Fourth Amendment claim against him, individually. Holguin specifically argues that Plaintiff does not allege what unlawful actions he engaged in that were separate from Brookhouser's actions. In other words, Holguin complains that Plaintiff alleges improperly that the collective and undifferentiated "Defendants" engaged in unlawful actions.

"In conducting [a] qualified immunity analysis, ... courts must consider ... whether *each defendant's* alleged conduct violated the plaintiff's clearly established rights." *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018) (citation omitted) (emphasis added). "Before a court may undertake the proper [qualified immunity] analysis, the complaint must 'isolate the allegedly unconstitutional acts of each defendant'; otherwise the complaint does not 'provide adequate notice as to the nature of the claims against each' and fails for this reason." *Id.* (citation omitted). Put another way, "to state a viable § 1983 claim *and* overcome a qualified immunity defense, plaintiffs 'must establish that each defendant ... [violated] plaintiffs' clearly established constitutional rights.... *Plaintiffs must do more than show ... that 'defendants,' as a collective and undifferentiated whole, were responsible for those violations*.'" *Id.* at 1145 (citation

omitted); *see also Brown v. Montoya,* 662 F.3d 1152, 1163 (10th Cir. 2011) (noting that "in a § 1983 action it is 'particularly important' that 'the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state'" (citation omitted)); *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cty. Justice Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007) (advising district court in Section 1983 case to inform *pro se* litigant that "complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated").

Plaintiff's only specific allegations concerning Holguin are: (1) "On September 21, 2016, Defendants Brookhouser and Olguin [sic] arrested [Plaintiff] for unlawful taking of a motor vehicle, larceny and conspiracy to commit unlawful taking of a motor vehicle;" and (2) "Olguin [sic] stepped in and told Defendant Brookhouser to 'Stop' and 'that was enough' because of how roughly Defendant Brookhouser was treating" Plaintiff."  (Doc. 17) at ¶¶ 4 and 45. Even if the Court viewed these two specific allegations as true and in Plaintiff's favor, those allegations alone do not state a plausible constitutional violation.  In fact, Plaintiff does not argue that these two allegations provide the basis of a Fourth Amendment violation by Holguin.  Moreover, Plaintiff does not address Holguin's argument that he failed to "isolate the allegedly unconstitutional acts of each defendant" and to differentiate between the actions taken by Holguin and Brookhouser, respectively.  *See Matthews*, 889 F.3d at 1144.

Plaintiff's reliance on the actions of the collective "Defendants" simply fails to state a viable Section 1983 Fourth Amendment claim against Holguin.  Thus, Plaintiff has not pled facts that establish the first qualified immunity prong.  Holguin, therefore, is entitled to a qualified

immunity defense with respect to the Fourth Amendment claims brought against him in Count I. Consequently, the Court grants the Motion to Dismiss on that basis.

    IT IS ORDERED that

    1.  Defendant Olguin's [sic] Motion to Dismiss Plaintiff's First Amended Complaint and for Qualified Immunity (Doc. 19) is granted in that Count I of the First Amended Complaint is dismissed without prejudice as to Defendant David Holguin; and

    2.  Holguin's request to stay the lawsuit is denied as moot.

_____
UNITED STATES DISTRICT JUDGE