IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERNEST NAJERA,

     Plaintiff,

vs.                                           Civ. No. 19-1050 KG/KRS

BOBBY BROOKHOUSER and
DAVID OLGUIN,

     Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

     This matter comes before the Court upon "Defendant Bobby Brookhouser's First Motion for Partial Dismissal of Plaintiff's First Amended Complaint for Wrongful Arrest and Excessive Force & Memorandum in Support Thereof" (Motion to Dismiss), filed December 20, 2019. (Doc. 18). Plaintiff filed a response on January 10, 2020, and Defendant Bobby Brookhouser (Brookhouser) filed a reply on January 17, 2020. (Docs. 21 and 25). Having reviewed the Motion to Dismiss, the accompanying briefing, and the First Amended Complaint for Wrongful Arrest, Malicious Prosecution and Excessive Force (First Amended Complaint) (Doc. 17), the Court grants the Motion to Dismiss.

     As an initial matter, the Court takes judicial notice of various public court documents filed in the underlying state criminal cases and attached to Brookhouser's reply.[1] *See Binford v. United States*, 436 F.3d 1252, 1256 n. 7 (10th Cir. 2006) (acknowledging that "court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public

---

[1] Brookhouser attached those state court documents to a prior motion to dismiss that he subsequently withdrew. (Docs. 8 and 22). Consequently, Plaintiff was aware of the state court documents prior to responding to this Motion to Dismiss.

record"). The Court notes that "while ordinarily, a motion to dismiss must be converted to a motion for summary judgment when the court considers matters outside the complaint …, matters that are judicially noticeable do not have that effect…." *Nowell v. Medtronic Inc.*, 372 F. Supp. 3d 1166, 1208 (D.N.M. 2019). Thus, taking judicial notice of the state court documents does not convert this Motion to Dismiss to a motion for summary judgment. Finally, the Court will not consider the state court documents for the truth of the matters asserted in them. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (noting that judicially noticed "documents may only be considered to show their contents, not to prove the truth of matters asserted therein").

*I. The First Amended Complaint and State Court Documents*

Plaintiff brings this 42 U.S.C. § 1983 civil rights lawsuit against Luna County Sheriff's Deputies Brookhouser and David Holguin (Holguin),[2] in their individual capacities. (Doc. 17) at ¶ 3. Plaintiff alleges that Larry McCormick (McCormick) owned a "junkyard" in Deming, New Mexico, and had agreed to sell the real property and its contents to Elizabeth Eidinger (Eidinger), who lived on the property. *Id.* at ¶¶ 8, 13-14. Plaintiff alleges that "Defendants knew that Eidinger had lived on the McCormick property." *Id.* at ¶ 15.

Plaintiff further alleges that McCormick's wife, who lives in Arizona, reported McCormick as missing in October 2015 and that "law enforcement" presumed that human remains found on the McCormick property belonged to McCormick. *Id.* at ¶¶ 17-18, 25. Plaintiff asserts that nearly a year later, the Office of the Medical Investigator confirmed that the human remains belonged to McCormick. *Id.* at ¶ 19. Plaintiff maintains "Defendants" knew that

---

[2] Plaintiff incorrectly identified Defendant David Holguin as "David Olguin" in the First Amended Complaint. *See* (Doc. 20) at 1 n.1.

2

even after McCormick was presumed dead McCormick's wife "did nothing to secure any real or personal property purportedly belonging to her or Larry McCormick," including establishing an "Estate of Larry McCormick."  *Id.* at ¶¶ 27 and 29.  Consequently, Plaintiff contends that McCormick's wife either did not own the junkyard and its contents or abandoned that property. *Id.* at ¶ 28.

Holguin prepared a Statement of Probable Cause, filed on September 22, 2016, in state court, in which he states that he had reason to believe Plaintiff committed three counts of unlawful taking of a motor vehicle, four counts of larceny, and one count of conspiracy to unlawfully take a motor vehicle.  (Doc. 25-2).  To support the Statement of Probable Cause, Holguin states that on September 21, 2016, dispatch received a call from Omar Rudicil reporting that his red Ford F-350 dually truck was missing from the McCormick property.  *Id.* at ¶ 2. Holguin further states that while investigating the missing red Ford F-350 dually truck, investigators contacted Plaintiff at his work-shop.  *Id.* at ¶ 3.  According to Holguin, he escorted Plaintiff to the Luna County Sheriff's Office to speak with him about the missing red Ford F-350 dually truck.  *Id.*

Holguin notes in the Statement of Probable Cause that Plaintiff stated he was watching the property for his friend, Eidinger, who was incarcerated.  *Id.* at ¶ 4.  Plaintiff also stated that he had an agreement with Eidinger to sell items from the property and admitted to taking the red Ford F-350 dually truck from the property.  *Id.* at ¶ 5.  Plaintiff further stated that someone took the truck from his property and that he did not know its whereabouts.  *Id.*  Plaintiff stated that "he knew the truck belonged to Larry McCormick but that he heard that he was dead."  *Id.* Finally, Plaintiff admitted to Holguin that he took the following items from the McCormick property to his own property: a white van, a "Concord Traveler," a "Vacationer" fifth wheel

trailer, a white homemade trailer, an air compressor, a generator, and a tire changing machine. *Id.* at ¶ 6. Plaintiff also stated that he sold a washer, a motorcycle, and a canoe, which all came from the McCormick property. *Id.* at ¶ 7.

After Plaintiff made those statements, Brookhouser and Holguin arrested Plaintiff on September 21, 2016, for unlawfully taking the above property. (Doc. 17) at ¶ 4; (Doc. 25-1). Plaintiff contends that he "told Defendants that Eidinger told him that she had bought or was in the process of buying the property from McCormick." (Doc. 17) at ¶ 16. Plaintiff asserts that he was selling "items from the Eidinger property" that no longer belonged to McCormick. *Id.* at ¶ 36.

Plaintiff also asserts that when Defendants arrested him on September 21, 2016, Brookhouser roughly handcuffed him with two sets of handcuffs, tightened the handcuffs, and pushed him, which caused pain. *Id.* at ¶¶ 40 and 42. Plaintiff notes that he is 75 years old, suffers from diabetes and arthritis, and was born with crooked arms. *Id.* at ¶¶ 41 and 44. As a result of Brookhouser's actions, Plaintiff contends that "Olguin [sic] stepped in and told Defendant Brookhouser to 'Stop' and 'that was enough' because of how roughly Defendant Brookhouser was treating" Plaintiff. *Id.* at ¶ 45. Plaintiff alleges that he was then placed in custody at the Luna County Detention Center because he could not post the $25,000 bond. *Id.* at ¶¶ 46, 48, and 49.

On September 22, 2016, Holguin filed a Criminal Complaint in state court stating that Plaintiff unlawfully took the red Ford F-350 dually truck, owned by Rudicil, and unlawfully took a white van, motorcycle, "Concord Traveler," "Vacationer" fifth wheel trailer, white homemade trailer, washing machine, canoe, compressor, generator, and a tire changing machine, all owned

by McCormick. (Doc. 25-1).  Holguin also states in the Criminal Complaint that Plaintiff

conspired with Eidinger to unlawfully take a motor vehicle.  *Id.* at 2.

On September 29, 2016, Plaintiff maintains that the state district court released him from

the Luna County Detention Center at 11:00 a.m., due to a medical condition.  (Doc. 17) at ¶ 50.

Plaintiff alleges that "Defendants" knew about this medical release.  *Id.* at ¶ 52.

That same day, Holguin prepared an Affidavit for Arrest Warrant in which he states he

has reason to believe that Plaintiff unlawfully took another motor vehicle.[3]  (Doc. 25-3) at 1.

Holguin states in the Affidavit for Arrest Warrant that on September 29, 2016, he met with

William Young (Young) about property being taken from the McCormick property.  *Id.* at ¶ 2.

"Young stated that he was present when Ernest Najera took property off the property he

discribed [sic] as being" Eidinger's.  *Id.* at ¶ 4.  Young specifically stated that Plaintiff took a

welder and a white Chevy S-10 pick-up truck from the property, and sold the white Chevy S-10

pick-up truck to a person living at a trailer park.  *Id.* Young further noted that Plaintiff had also

taken "two gooseneck trailers and several other vehicles" from the property, which Young

described as the place "where someone killed the owner."  *Id.* at ¶ 5.

Holguin further states in the Affidavit for Arrest Warrant that the white Chevy S-10 pick-

up truck was located at the trailer park.  *Id.* at ¶ 6.  According the Holguin, the white Chevy S-10

pick-up truck did not have a license plate and was registered to Plaintiff with the title issued to

him in July 2016.  *Id.* Additionally, Holguin states that Brookhouser called McCormick's wife

on September 29, 2016, and that she "stated that she did not give anyone permission to take

anything off the property."  *Id.* at ¶ 7.  McCormick's wife also stated that the "S-10 pick-up was

---

[3] Plaintiff contends that "Defendants asserted in a search warrant affidavit that 'it is known that
Elizabeth Eidinger … had no interest in the property and its contents at" McCormick's property.
(Doc. 17) at ¶ 39.  That language is not in this Affidavit for Arrest Warrant.

registered to her." *Id.*  Finally, McCormick's wife stated "that since her husband was killed, she

has heard that a [sic] older guy was selling her husband's stuff." *Id.*

Plaintiff asserts that at around 5:00 p.m. on September 29, 2016, Brookhouser and five or

six Luna County Sheriff's Deputies arrived at his house.  (Doc. 17) at ¶ 54.  According to

Plaintiff, Brookhouser told him "he was under arrest for stealing the white pickup truck that was

on his property." *Id.* at ¶ 55.  After Brookhouser handcuffed Plaintiff, Plaintiff maintains that

Brookhouser pulled him "to and from his truck to Defendant Brookhouser's police vehicle." *Id.*

at ¶¶ 59-60.

Plaintiff asserts that "[o]n September 29, 2016, Defendants learned that a white pick-up

truck had been given to Eidinger while McCormick was still alive." *Id.* at ¶ 31.  Plaintiff alleges

that "[t]he white pick-up truck had an open title, which McCormick had given to his friend"

Eidinger. *Id.* at ¶ 12.  Plaintiff contends that Eidinger then gave him an "open title" to the white

pick-up truck, which he titled in his name, and then sold for Eidinger. *Id.* at ¶ 32.  Plaintiff also

contends that "Defendants never investigated [his] claim that Eidinger was buying the property

from McCormick" nor did "Defendants" question Eidinger about his claims. *Id.* at ¶¶ 37 and 38.

On October 20, 2016, the district attorney filed a Criminal Information based on the

September 22, 2016, Criminal Complaint.  (Doc. 25-4).  The district attorney states in the

Criminal Information that, except for Rudicil's red Ford F-350 dually truck, both McCormick

and his wife owned the property Plaintiff allegedly took. *Id.*  On November 8, 2016, the district

attorney filed a Criminal Information which charged Plaintiff with unlawfully taking the white

Chevy S-10 pick-up truck.  (Doc. 25-5).

On February 15, 2017, the district attorney filed a Nolle Prosequi related to the charge

involving the white Chevy S-10 pick-up truck and dismissed that "case without prejudice as the

victim is uncooperative." (Doc. 25-6). The district attorney also filed a Nolle Prosequi on April 19, 2017, related to the remaining charges, with the exception of the unlawful taking of the van, and dismissed those charges without prejudice. (Doc. 25-7). Finally, on July 19, 2017, the district attorney filed a Nolle Prosequi related to the unlawful taking of the van and dismissed that charge without prejudice due to "insufficient evidence." (Doc. 25-8).

Relevant to this Motion to Dismiss, Plaintiff brings Section 1983 Fourth Amendment wrongful arrest and malicious prosecution claims against Brookhouser in Count I of the First Amended Complaint.[4] Plaintiff alleges that "Defendants" arrested and prosecuted him without probable cause although he "twice explained to Defendants that he did not steal anything and had no knowledge it was stolen." (Doc. 17) at ¶¶ 76, 77, and 86. Plaintiff further notes that "Defendants failed to even interview Eidinger." *Id.* at ¶ 79. Also, Plaintiff alleges that "Defendants acted maliciously in charging [him] with an additional count of larceny on September 29, 2016, when they knew that the court had released [him] for medical reasons." *Id.* at ¶ 82.

*II.  The Motion to Dismiss*

Brookhouser moves under Fed. R. Civ. P. 12(b)(6) to dismiss the Fourth Amendment claims brought against him in Count I on the basis of qualified immunity. Plaintiff argues that Brookhouser is not entitled to qualified immunity.

*III.  Rule 12(b)(6) Standard*

---

[4] Plaintiff also brings a Section 1983 Fourth Amendment excessive force claim against Brookhouser in Count II. Brookhouser does not move to dismiss Count II in this Motion to Dismiss.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In making this plausibility assessment, courts "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011)).

In evaluating a qualified immunity defense in the context of a Rule 12(b)(6) motion to dismiss, courts "must determine whether the plaintiff pled facts indicating: (1) the defendant violated a statutory or constitutional right and (2) that right was 'clearly established' at the time of the challenged conduct." *Crall v. Wilson,* 769 Fed. Appx. 573, 575 (10th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Courts "may address the two prongs of the qualified immunity analysis in either order: '[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense.'" *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied sub nom. Cummings v. Bussey*, 140 S. Ct. 81 (2019) (quoting *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016), *cert. denied*, ___ U.S. ___, 137 S.Ct. 2151 (2017)).

With respect to the second qualified immunity prong, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Thomas v. Durastanti*, 607

F.3d 655, 669 (10th Cir. 2010) (quotation omitted).  Ordinarily, "a preexisting Supreme Court or

Tenth Circuit decision, or the weight of authority from other circuits, must make it apparent to a

reasonable officer that the nature of his conduct is unlawful." *Carabajal v. City of Cheyenne*,

847 F.3d 1203, 1210 (10th Cir. 2017).  In deciding whether a precedent provides fair notice to a

defendant, the United States Supreme Court has instructed courts "not to define clearly

established law at a high level of generality." *Kisela v. Hughes*, ⸺ U.S. ⸺, 138 S. Ct. 1148,

1152 (2018).  Rather, "the clearly established law must be 'particularized' to the facts of the

case." *White v. Pauly*, ⸺ U.S. ⸺, 137 S. Ct. 548, 552, (2017) (*per curiam*) (quoting *Ashcroft

v. al-Kidd*, 563 U.S. 731, 742 (2011)).  Although there need not be "a case directly on point for a

right to be clearly established, existing precedent must have placed the statutory or constitutional

question *beyond debate*." *Kisela*, 138 S. Ct. at 1152 (emphasis added) (quoting *White*, 137 S. Ct.

at 551).

        "The law is also clearly established if the conduct is so obviously improper that any

reasonable officer would know it was illegal." *Callahan v. Unified Gov't of Wyandotte Cty.*, 806

F.3d 1022, 1027 (10th Cir. 2015).  In other words, "when a public official's conduct is so

egregious [that] even a general precedent applies with 'obvious clarity,' the right can be clearly

established notwithstanding the absence of binding authority involving materially similar facts."

*Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020).  Courts, however, must not use the

"obvious clarity" doctrine "when there are any relevant ambiguities…." *Colbruno v. Kessler*,

928 F.3d 1155, 1165 (10th Cir. 2019).  "'[T]he obvious clarity' scenario, is a 'narrow exception'

to the 'normal rule that only case law and specific factual scenarios can clearly establish a

violation.'" *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248,

1260 (11th Cir. 2018). (citation omitted).  In sum, "qualified immunity protects 'all but the

plainly incompetent or those who knowingly violate the law.'"  *Aldaba v. Pickens*, 844 F.3d 870,

877 (10th Cir. 2016) (quoting *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 308 (2015)).

## IV.  Discussion

### A.  False Arrest Claim

Brookhouser initially argues in his Motion to Dismiss that Plaintiff has not alleged a

plausible Fourth Amendment false arrest claim.  Specifically, Brookhouser argues he had *actual*

probable cause to arrest Plaintiff and, thus, did not violate the Fourth Amendment.  Nonetheless,

in replying to Plaintiff's response, Brookhouser asserts that he is entitled to qualified immunity

because he had *arguable* probable cause to arrest Plaintiff, an argument relevant to whether a

clearly established Fourth Amendment right exists.  The Court will focus on this last argument

since Brookhouser emphasizes it in his reply.

In a Fourth Amendment case, whether a right is clearly established "depends very much

on the facts of each case, and the precedents must *squarely govern* the present case."  *Aldaba*,

844 F.3d at 877 (emphasis added) (quotations omitted); *see also see also White*, 137 S. Ct. at 552

(holding that Tenth Circuit "misunderstood the 'clearly established' analysis" when it "failed to

identify a case where an officer acting under similar circumstances as [the defendant] was held to

have violated the Fourth Amendment").  With respect to a Fourth Amendment "unlawful arrest

claim, [the court] ascertain[s] whether a defendant violated clearly established law by asking

whether there was *arguable* probable cause for the challenged conduct."  *Stonecipher v. Valles*,

759 F.3d 1134, 1141 (10th Cir. 2014) (emphasis added) (quoting *Kaufman v. Higgs*, 697 F.3d

1297, 1300 (10th Cir. 2012)).  "In other words, in the § 1983 qualified-immunity context, an

officer may be mistaken about whether he possesses *actual* probable cause to effect an arrest, so long as the officer's mistake is reasonable –*viz.*, so long as he possesses 'arguable probable cause.'" *A.M.*, 830 F.3d at 1140 (citation omitted).  Consequently, the Court must "determin[e] whether the 'facts and circumstances within the arresting officer's knowledge and of which [they] ha[d] reasonably trustworthy information' were *arguably* 'sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.'" *Garcia v. Escalante,* 678 Fed. Appx. 649, 655 (10th Cir. 2017) (quoting *A.M.*, 830 F.3d at 1138).  To make this determination, the Court examines "the totality of the circumstances [facing the officers,] taking into account both inculpatory as well as exculpatory evidence." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008).

The Court notes that probable cause did not require Brookhouser to rule out Plaintiff's claims of innocence.  *See Rife v. Oklahoma Dep't of Pub. Safety*, 854 F.3d 637, 644–45 (10th Cir. 2017) (finding evidentiary item "immaterial because probable cause does not require police officers to rule out all innocent explanations for a suspect's behavior").  Furthermore, to the extent Plaintiff alleges that Brookhouser's failure to investigate led to a false arrest, the Court notes that "the failure to investigate a matter fully, to exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence rarely suggests a knowing or reckless disregard for the truth. To the contrary, it is generally considered to betoken negligence at most," not a constitutional violation.  *Stonecipher,* 759 F.3d at 1142.  Also, Brookhouser is entitled to rely on information relayed to him by Holguin to determine if probable cause to arrest exists so long as that reliance is objectively reasonable.  *See Oliver v. Woods*, 209 F.3d 1179, 1190–91 (10th Cir. 2000) (stating that "[p]olice officers are entitled to rely upon information relayed to them by other officers in determining whether there is

11

reasonable suspicion to justify an investigative detention or probable cause to arrest" if "reliance upon this information [is] objectively reasonable").

When an officer's claim of probable cause rests on a state criminal statute, "the precise scope of [the federal constitutional right of freedom from unlawful arrest] uniquely depends on the contours of a state's substantive criminal law." *Kaufman*, 697 F.3d at 1300–01.  Here, Plaintiff argues that the state crime of larceny cannot occur when the property at issue has been abandoned. Plaintiff cites *Morisette v. United States*, 342 U.S. 246 (1952), for the proposition that "whether the defendant intended to take property he believed to be abandoned was insufficient to prove that he intended to deprive the owner of the property."  (Doc. 21) at 8. Although an intent to take abandoned property does not support a larceny conviction, "the evidence necessary to support a police officer's determination of probable cause is substantially less than that required to support a conviction."  *Sanchez v. Melendrez*, 934 F. Supp. 2d 1325, 1336 (D.N.M. 2013).  For this reason, "*Morissette* cannot be said to be 'clearly established law' controlling the question of whether [a defendant] had probable cause…."  *Id.* at 1337.

Plaintiff also argues that the state crime of larceny cannot occur when the owner of the property at issue is dead.  Plaintiff alleges in the First Amended Complaint that Defendants knew McCormick was dead and that deceased persons cannot own property.  (Doc. 17) at ¶ 29. Plaintiff also alleges that Defendants should have known that Eidinger now owned the property at issue.  *Id.* at ¶ 80.  Even viewing these allegations as true and in Plaintiff's favor, the totality of the circumstances facing Brookhouser also included Plaintiff's admission that he took Rudicil's red Ford F-350 dually truck without Rudicil's permission, and the statements by McCormick's wife, whether true or not, that the white Chevy S-10 pick-up truck had been registered to her, she did not give anyone permission to take the white Chevy S-10 pick-up truck, and that she "heard

that a [sic] older guy was selling her husband's stuff."[5]  *See* (Doc. 25-2) at 1-2, ¶¶ 2-5; (Doc. 25-3) at 2, ¶ 7.  The above facts and circumstances within Brookhouser's knowledge were arguably sufficient to lead a prudent officer to believe Plaintiff unlawfully took the red Ford F-350 dually truck and the white Chevy S-10 pick-up truck, i.e., that Brookhouser had arguable probable cause to arrest Plaintiff for those crimes.

Furthermore, Plaintiff has not presented precedent that would place the alleged unconstitutional arrests "beyond debate" nor has he presented controlling authority that "squarely governs the case here."  *Kisela*, 138 S.Ct. at 1152; *Aldaba,* 844 F.3d at 877.  In other words, Plaintiff has failed to provide any "controlling caselaw involving sufficiently similar circumstances that would have 'apprise[d] every objectively reasonable officer' that he lacked probable cause to arrest and subsequently prosecute Plaintiff…."  *Garcia,* 678 Fed. Appx. at 656-57 (citation omitted).

Even so, Plaintiff argues, in the alternative, that Brookhouser's arrests of Plaintiff for larceny of allegedly abandoned property would have been so obviously improper to a reasonable law enforcement officer that he did not need to present controlling caselaw to clearly establish the unconstitutionality of those arrests.  However, "relevant ambiguities" exist in this case that preclude application of the obvious clarity doctrine.  *See Colbruno*, 928 F.3d at 1165.  Although McCormick's wife told Brookhouser that she did not give Plaintiff permission to take her white Chevy S-10 pick-up truck, Plaintiff claims that either (1) Eidinger acquired the contents of the McCormick property from McCormick and allowed Plaintiff to sell the contents, including the white Chevy S-10 pick-up truck, or (2) McCormick's wife abandoned the McCormick property

---

[5] The Court notes that Plaintiff does not argue or allege facts to indicate that Brookhouser's reliance on Holguin's information about Plaintiff taking the red Ford F-350 dually truck without Rudicil's permission was not objectively reasonable.

and its contents, including the white Chevy S-10 pick-up truck.  These ambiguities regarding ownership of the property at issue prevent the Court from applying the obvious clarity doctrine in this case.

For all of the above reasons, Plaintiff has failed to carry his burden of demonstrating that Brookhouser violated clearly established Fourth Amendment law when he arrested Plaintiff. Accordingly, Brookhouser is entitled to qualified immunity with respect to the Fourth Amendment false arrest claim brought in Count I.

### B.  Malicious Prosecution Claim

Brookhouser argues that Plaintiff has neither pled a plausible Fourth Amendment malicious prosecution claim against him nor has Plaintiff shown the existence of a clearly established Fourth Amendment right not to be prosecuted for the crimes for which Plaintiff was charged.  Hence, Brookhouser contends he is entitled to qualified immunity on the malicious prosecution claim brought against him in Count I.

### 1.  The First Qualified Immunity Prong:  Whether Plaintiff has Alleged a Plausible Fourth Amendment Malicious Prosecution Claim Against Brookhouser

To prove a malicious prosecution claim, a plaintiff must demonstrate:

(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Stonecipher*, 759 F.3d at 1146.  Brookhouser contends first that Plaintiff has not alleged facts that demonstrate he caused either Plaintiff's continued confinement or prosecution, the first malicious prosecution element.  Brookhouser specifically contends that Plaintiff cannot satisfy that element because Brookhouser did not file the charges against Plaintiff.  Plaintiff argues, however, that Brookhouser's false arrests caused his continued confinement and prosecution.

14

Contrary to Brookhouser's argument, the Tenth Circuit has held that a defendant "cannot 'hide behind' the fact that she neither initiated nor filed the charges" against a plaintiff when facing a malicious prosecution claim. *Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004). As the Tenth Circuit has explained, "an officer typically does not proximately cause a malicious prosecution because the independent decisions of the prosecutor in bringing the charge and the court in issuing a [sic] indictment or warrant constitute superseding causes that break the chain of causation." *Calvert v. Ediger*, 415 Fed. Appx. 80, 83 (10th Cir. 2011). Even so, "officers are not shielded from liability if a causal connection can be established demonstrating that the prosecutor's and court's actions were not truly independent causes" such as when officers exert "undue influence over the prosecuting authority" or "conceal or misrepresent material facts to the prosecutor, whose judgment was thereby influenced by the misstatements." *Id.* at 83-84.

In this case, Plaintiff does not allege facts which show that Brookhouser exerted some kind of undue influence over the district attorney or concealed or misrepresented material facts to the district attorney. In fact, Holguin, and not Brookhouser, prepared the Criminal Complaint and Statement of Probable Cause related to Plaintiff's first arrest, which, presumably, persuaded the district attorney to file a Criminal Information. Without more factual development, the mere allegation that Brookhouser unlawfully arrested Plaintiff does not satisfy the first element of a malicious prosecution claim. *See Dufort v. City of New York,* 874 F.3d 338, 352 (2d Cir. 2017) (observing that when malicious prosecution is "based on an 'unlawful arrest,' the 'intervening exercise of independent judgment' by a prosecutor to pursue the case usually breaks the 'chain of causation' unless the plaintiff can produce evidence that the prosecutor was 'misled or pressured' by the police"); *DeSantis v. Town of Cheektowaga*, 2020 WL 1530773, at *8 (W.D.N.Y.) (stating that "police officer 'must do more than report the crime or give testimony' to be

considered to have initiated a criminal proceeding" (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010)).

Considering the Court's determination as to the first element of a malicious prosecution claim, the Court need not address the second, third, and fifth elements of a malicious prosecution claim. However, the Court will briefly address the fourth element, whether Brookhouser acted with malice. Plaintiff argues that Brookhouser acted with malice when he "rearrested Plaintiff without probable cause, knowing that Plaintiff had just been released from custody due to medical reasons." (Doc. 21) at 11. The Tenth Circuit has held that "[m]alice may be inferred if a defendant causes the prosecution without *arguable* probable cause." *Stonecipher*, 759 F.3d at 1146 (emphasis added). As already discussed in relation to the false arrest claim, Plaintiff has failed to allege facts which show that Brookhouser lacked arguable probable cause to arrest Plaintiff, even if Plaintiff was just released from custody due to a medical condition. Consequently, Plaintiff has not alleged sufficient facts to meet the malice element.

For the foregoing reasons, the Court determines that Plaintiff has not pled sufficient facts to show that Brookhouser violated the Fourth Amendment by maliciously prosecuting Plaintiff. Consequently, Plaintiff fails to meet the first qualified immunity prong with respect to the malicious prosecution claim. Assuming *arguendo* that Plaintiff did plead sufficient facts to show that Brookhouser maliciously prosecuted Plaintiff, the Court will address the second qualified immunity prong, the existence of clearly established law.

> *2. The Second Qualified Immunity Prong: Whether Plaintiff has Shown that Clearly Established Law Exists as to the Fourth Amendment Malicious Prosecution Claim Brought Against Brookhouser*

The Court notes that Plaintiff does not cite any caselaw to support his contention that an officer who knows a suspect was just released from custody for a medical reason acts with

malice by subsequently arresting the suspect on the basis of arguable probable cause.  Instead,

Plaintiff cites two cases from outside of the Tenth Circuit for the proposition that in a case with

multiple charges, the Court must analyze each charge separately to determine if it was

maliciously prosecuted.  *Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007); *Posr v. Doherty*, 944

F.2d 91 (2d Cir. 1991).  In other words, Plaintiff contends "that probable cause on one charge

does not foreclose a malicious prosecution cause of action against a defendant for having brought

criminal charges involving different elements."  *Johnson*, 477 F.3d at 83.  Unfortunately for

Plaintiff, "there is currently no 'clearly established law [in the Tenth Circuit] suggesting that a

claim for malicious prosecution lies when one charge is supported by probable cause but other

simultaneous charges arising from the same set of facts are not'...."  *Montgomery v. Chernak*,

2019 WL 979071, at *13 (D. Colo.) (quoting *Van De Weghe v. Chambers*, 569 Fed. Appx. 617,

619–20 (10th Cir. 2014)).  Consequently, Plaintiff has not presented precedent that would place

the alleged malicious prosecution by Brookhouser "beyond debate" nor has he presented

controlling authority that "squarely governs the case here."  *Kisela*, 138 S.Ct. at 1152; *Aldaba*,

844 F.3d at 877. Put another way, Plaintiff has failed to provide any "controlling caselaw

involving sufficiently similar circumstances that would have 'apprise[d] every objectively

reasonable officer' that he" was maliciously prosecuting Plaintiff.  *Garcia,* 678 Fed. Appx. at

656-57 (citation omitted).  Plaintiff, therefore, does not meet the second qualified immunity

prong with respect to the malicious prosecution claim against Brookhouser.

       In sum, Brookhouser is entitled to qualified immunity on the Fourth Amendment

malicious prosecution claim as well.  Having also determined that Brookhouser is entitled to

qualified immunity on the Fourth Amendment false arrest claim, the Count grants this Rule

12(b)(6) Motion to Dismiss and will dismiss Count I without prejudice as it relates to Brookhouser.

IT IS ORDERED that

1. Defendant Bobby Brookhouser's First Motion for Partial Dismissal of Plaintiff's First Amended Complaint for Wrongful Arrest and Excessive Force & Memorandum in Support Thereof (Doc. 18) is granted; and

2. Count I of the First Amended Complaint is dismissed without prejudice as to Defendant Bobby Brookhouser.

_____
UNITED STATES DISTRICT JUDGE